**Fill in this information to identify the case:**

Debtor Name Buttercup Bodywear, Inc.
United States Bankruptcy Court for the: Southern District of California

Case number: 26-00877-JBM11

☒ Check if this is an amended filing

Official Form 425A

# Plan of Reorganization for Small Business Under Chapter 11

02/20

**Second Amended Plan of ~~Reorganization~~Liquidation, Dated ~~July~~October ~~6~~13, 2026**

## Background for Cases Filed Under Subchapter V

### A. Description and History of the Debtor's Business

#### 1. Debtor's Business Structure and Operations

Founded in January 2019, Debtor is a Delaware corporation doing business as SheBird. Debtor is an innovator in women's fashion that designs and sells women's apparel via its online store and a few third-party stores nationwide.

Sheila Attari is the Debtor's CEO and owns approximately 85% of the outstanding common shares.

Debtor leases warehouse space from ReadySpaces CHV, LLC ("ReadySpaces") at its facility at 505 Main St, Chula Vista, CA 91911. This lease is month-to-month and Debtor pays $5,150/mo. Debtor employs two non-insider employees who manage Debtor's inventory and ship packages to customers from there.

Debtor's financial struggles began in 2023. At that time, Debtor's manufacturer, Xiamen Feeling Textile & Garment Co. Ltd dba Feeling Good, required Debtor to place bulk orders to purchase its inventory, some of which did not sell well. A contract dispute arose. Feeling Good, located in China, would not release finished goods from its warehouse prior to payment from Debtor on its prior orders. Since then, Debtor has changed its manufacturer, which will allow Debtor to purchase inventory in smaller quantities. Debtor can now be nimbler in responding to sales trends and customer feedback.

Around this same time, Debtor's business faced new competition, which increased marketing expenses on Facebook and Google. To account for these additional expenses, Debtor planned to raise prices by 10% to restore a healthy net operating income (NOI).

Shortly thereafter, the presidential election was held in the United States. In early 2025, the new administration drastically changed existing trade policies. The U.S. raised tariffs on the import of apparel manufactured in China. In addition, pursuant to an Executive Order issued on February 1, 2025, the U.S. closed the use of de minimis exemptions for commercial shipments from Mexico that were valued under $800 and were previously authorized under 19 U.S.C. § 1321. In response, Mexico imposed its own tariffs on imports from the U.S. Because the Debtor had imported its inventory from China, and warehoused in and exported from Mexico, the Debtor was incurring increased tariffs each time its inventory crossed the border. Accordingly, Debtor moved its warehouse to the current Chula Vista location. This helped reduce operational costs. But the heightened tariffs still took a toll on the Debtor's NOI. To compensate, Debtor increased its prices by 20%.

## 2. Debtor's Bankruptcy Case

On March 1, 2026 ("Petition Date"), Debtor filed this bankruptcy case. Debtor is a small business debtor within the meaning of 11 U.S.C. § 101(51D), and has elected to proceed as a small business debtor under Chapter 11, Subchapter V.

On the Petition Date, Debtor's bank accounts were overdrawn but Debtor had accounts receivable $22,241.00 that would be paid by 3/3/2026. Debtor also had inventory with a cost basis of $265,387.67, and a 2021 Mercedes-Benz GLE 350 valued at $33,350.00.

On the Petition Date, Debtor's assets were encumbered with the following liens:

~~In first priority, Ouiby Inc. dba Kickfurther ("Kickfurther") holds a perfected lien against the remaining inventory of Co-Op 15800, which Debtor valued at $9,846.73 on the Petition Date.~~ Shopify Capital holds a perfected lien in first position against all of the Debtor's assets, which secures a merchant loan with an outstanding balance of $141,034.00 on the Petition Date. Shopify Capital filed its financing statement with the Delaware Department of State on July 31, 2025.

Ouiby Inc. dba Kickfurther ("Kickfurther") holds perfected liens against the inventory funded by each of the four Co-Ops, on financing statements filed between January 16, 2025 and June 16, 2025. Those filings precede Shopify Capital's, so as to that inventory Kickfurther is in first position and Shopify Capital in second. Only the inventory funded by Co-Op 15800 retained value on the Petition Date, which the Debtor valued at $9,846.73.

~~In second priority, Shopify Capital holds a perfected lien against all of the Debtor's assets, which secures a merchant loan with an outstanding balance of $141,034.00 on the Petition Date.~~

~~In third priority, Kickfurther holds a perfected lien against all of the Debtor's assets, which secures the Debtor's obligations on Co-Op 14330 and which secured $30,506.69 on the Petition Date.~~ Kickfurther also holds a perfected lien against all of the Debtor's assets, by the amendment it filed on November 10, 2025 to its Co-Op 14330 financing statement. As to all assets that lien is in second position, behind Shopify Capital's, which was filed more than three months earlier. On the Debtor's analysis the lien secured $30,506.69 on the Petition Date, being the Debtor's obligation on Co-Op 14330.

In addition, Samson MCA, LLC ("Samson") and Rapid Finance filed UCC-1 financing statements in California, but not in Delaware. Pursuant to UCC 9-301, these liens are not perfected and are subject to avoidance pursuant to 11 U.S.C. § 544(a)(1).

The Debtor's analysis of the Kickfurther claim under 11 U.S.C. § 506(a), allocating each Co-Op consignment advance to its separately filed UCC-1 financing statement and to the collateral value remaining on the Petition Date, is set forth in **Exhibit 2A**. Debtor and Kickfurther entered into a Plan Treatment Stipulation executed August 31, 2026.

~~Debtor owed approximately $58,735.56 in priority sales taxes owed to various state agencies.~~ Debtor owed approximately $64,986.27 in priority sales taxes owed to various state agencies, including $14,920.14 owed to the California Department of Tax and Fee Administration under its Proof of Claim No. 25 and $9,818.22 owed to the Florida Department of Revenue under its Proof of Claim No. 26.

Debtor also owed approximately $1,~~510~~540,~~245~~751.~~11~~80 to general unsecured creditors. The Debtor's general unsecured creditors include Xiamen Feeling Textile & Garment Co. ($275,858.74), Debtor's primary Chinese apparel supplier; Ouiby Inc. dba Kickfurther ($~~149~~179,~~062~~568.~~02~~71, the unsecured portion of ~~Kickfurther's~~its claim) on Co-Op consignment financing; BayFirst National Bank ($134,550.04) on an SBA-guaranteed business loan; Shopify, Inc. ($128,760.00) on platform and commerce obligations; individual noteholders Rene Murillo ($177,000.00), Susan Mecklenburg ($109,203.04), Pooneh Mohajer-Shojaee ($104,000.00), Maria Grosso Ledford ($52,000.00), Brad and Lisa Nelson ($50,000.00), Trent MacLean ($37,627.40), and Jared Quient ($26,000.00); Rapid Finance ($88,371.00) on the business line of credit; and Samson MCA, LLC ($94,448.22)

on the merchant cash advance agreement. A table summarizing the claims against Debtor's bankruptcy estate is attached as **Exhibit 2**.

On May 20, 2026, Debtor filed an adversary complaint against Samson, initiating the adversary proceeding *Buttercup Bodywear Inc. v. Samson MCA, LLC*, Adv. No. 26-90075-JBM ("Samson AP"). In the Samson AP, Debtor seeks judgment for, among other things, (1) declaratory relief that the merchant cash advance (MCA) was a usurious loan and void ab initio under New York law, (2) avoidance and recovery of all transfers made by Debtor to Samson (totaling $283,347.52) as constructive fraudulent transfers, and (3) disallowance of the Samson proof of claim. Samson did not respond to the first amended complaint, and on August 31, 2026, the Clerk entered its default.

After the Petition Date, the Debtor continued to incur operating losses, and it has determined that it cannot reorganize. The Debtor has stopped advertising, ended its marketing agency engagement, and reduced its staff. This Plan provides for the orderly liquidation of the Debtor's assets, the prosecution of the Samson AP, and the distribution of the proceeds to creditors in the order of priority set by the Bankruptcy Code.

During the case the Debtor has issued refunds to customers in the ordinary course of its business. The Debtor estimates that it owes approximately $80,000.00 in refunds to customers on account of postpetition sales. Those refunds are administrative expense claims.

## B. Liquidation Analysis

To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation.

~~Under a chapter 7 liquidation, the Debtor expects unsecured creditors to receive $339.19. Under this Plan, the Debtor expects priority creditors to be paid in full with legal interest and general unsecured creditors to receive $233,618.71. The Debtor's liquidation analysis is attached as Exhibit 1.~~ Under a chapter 7 liquidation, secured claims and chapter 7 administrative expenses would exceed the value of the Debtor's assets, and chapter 11 administrative expenses, priority tax claims and general unsecured claims would receive nothing. Under this Plan, the Debtor will sell its assets itself, at retail and wholesale, without incurring the fee of a chapter 7 trustee under 11 U.S.C. § 326 or the fees of a chapter 7 trustee's professionals, and will prosecute the Samson AP for the benefit of creditors. The Debtor's liquidation analysis is attached as **Exhibit 1**.

### C. Ability to make future plan payments and operate without further reorganization

The Plan Proponent must also show that it will have enough cash over the life of the Plan to make the required Plan payments and operate the debtor's business.

The Plan is not funded from projected disposable income. It is funded from the liquidation of the Debtor's assets under Section 7.02 and from the Debtor's recoveries on its claims and causes of action, including the Samson AP. The amounts those sales and that litigation will produce cannot be determined until they are completed. The Debtor's estimate of the sources of funds available under the Plan is attached as **Exhibit 3**.
~~This Plan has a 60-month term which ends on June 30, 2031. Over this term, the Debtor will have $679,326.52 in projected disposable income (as defined by 11 U.S.C. § 1191(d)) for the period described in § 1191(d). A summary of Debtor's financial projections is attached as **Exhibit 3**.~~

The Debtor will distribute the proceeds as they are realized, in the order of priority set forth in Section 7.03. A table summarizing the claims against the Debtor's estate is attached as **Exhibit 2**.
~~Under the Plan, the Debtor proposes to pay $614,326.52 to creditors. A table summarizing the projected plan payments to creditors is attached as Exhibit 4. Plan payments will be paid on a quarterly basis with each quarterly payment due not later than the last day of each calendar quarter (i.e., March 31, June 30, September 30, and December 31). Each quarter referred to herein shall be abbreviated. For example, the first quarter of 2026 shall be referred to as 1Q'26.~~

**You should consult with your accountant or other financial advisor if you have any questions pertaining to these ~~projections~~estimates.**

## Article 1: Summary

This Plan of ~~Reorganization~~Liquidation ("Plan") under chapter 11 of the Bankruptcy Code ("Code") proposes to pay creditors of Debtor from ~~disposable~~the ~~operating~~proceeds ~~income~~of the liquidation of the Debtor's assets and from ~~normal~~the ~~business~~Debtor's ~~operations~~recoveries on its claims and causes of action, including the Samson AP.

This Plan provides for: __0__ class of priority claims
__4__ classes of secured claims;
__2__ class of non-priority unsecured claims; and
__2__ class of equity security holders.

~~Overall, the Plan projects to pay 15.1%~~The distribution to general unsecured creditors~~,~~ ~~which~~will ~~may~~depend ~~increase~~on ~~substantially~~the ~~should~~proceeds ~~Debtor~~of ~~prevail~~the ~~in~~liquidation and the outcome of the Samson AP. With respect to each class of creditors, the Plan provides as follows:

The Plan provides for the payment of allowed administrative expense claims in full~~ by 4Q'26~~, and ~~payment~~of ~~of~~allowed priority tax claims in full ~~(~~with ~~applicable~~interest ~~legal~~under ~~interest)~~11 ~~by 4Q'29~~U.S.C. § 511, from the proceeds available under Section 7.03.

The Plan provides for payment in full of allowed Class 3A convenience claims ~~($5,772.59)~~ and a pro rata distribution~~ of $227,846.16~~ to holders of allowed Class 3B general unsecured claims of the proceeds remaining after payment of senior claims.

All creditors and equity security holders should refer to Articles 3 through 6 of this Plan for information regarding the precise treatment of their claim. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.**

## Article 2: Classification of Claims and Interests

| | |
|---|---|
| 2.01 **Class 1** | All allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2) and priority tax claims which are treated as unclassified claims). |
| 2.02 **Class 2** | All secured claims allowed under § 506 of the Code.<br><br>Class 2A – Shopify Capital<br>Class 2B – Ouiby Inc. dba Kickfurther<br>Class 2C – Samson MCA LLC<br>Class 2D – Rapid Finance |
| 2.03 **Class 3** | All non-priority unsecured claims allowed under § 502 of the Code.<br><br>Class 3A – General Unsecured Claims (Convenience Class)<br>Class 3B – General Unsecured Claims (Claims Over $1,500) |
| 2.04 **Class 4** | Equity interests in the Debtor. |

## Article 3: Treatment of Administrative Expense Claims, Priority Tax Claims, and Quarterly and Court Fees

| | |
|---|---|
| 3.01 **Unclassified claims** | Under 11 U.S.C. § 1123(a)(1), administrative expense claims, and priority tax claims are not in classes. |
| 3.02 **Administrative expense claims** | ~~Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full through payments under the plan consistent with 11 U.S.C. § 1191(e). See Exhibit 4. Payments to each holder of an allowed administrative expense claim will begin upon the later of payments to administrative expense claims becoming due under this Plan (Exhibit 4), or the date on which such claim is allowed by a final non-appealable order.~~Each holder of an administrative expense claim allowed under 11 U.S.C. § 503 will be paid in full through payments under the Plan consistent with 11 U.S.C. § 1191(e), from the proceeds available under Section 7.03, as funds become available, or on such other terms as the holder agrees. Administrative expense claims incurred in the ordinary course of the Debtor's business, including customer refunds owed on account of postpetition sales, may be paid in the ordinary course. Professional fees will be paid only upon allowance by order of the Court. |
| 3.03 **Priority tax claims** | Each holder of an allowed priority tax claim under 11 U.S.C. § 507(a)(8) will be paid in full, in ~~deferred~~ cash~~ payments~~, together with interest at the applicable rate determined under 11 U.S.C. § 511, consistent with 11 U.S.C. §§ 1129(a)(9)(C), ~~and 1191(e). The interest rate applicable to each priority tax claim is set forth in~~from the ~~schedule~~proceeds ~~of~~available ~~priority~~under ~~tax~~Section ~~claims attached~~7.03, as ~~Exhibit~~funds ~~4~~become available. Each allowed priority tax claim will be paid in full, with interest, on or before ~~December~~March ~~31~~1, ~~2029~~2031, which is~~ within~~ five years after the Petition Date. |
| 3.04 **Statutory fees** | Omitted. |

3.05 **Prospective quarterly fees** Omitted.

## Article 4: Treatment of Claims and Interests Under the Plan

4.01 **Claims and interests shall be treated as follows under this Plan:**

| Class | Impairment | Treatment |
|---|---|---|
| **Class 1**<br>Priority claims<br>(excluding those in Article 3) | ☐ Impaired<br>☐ Unimpaired | N/A |
| **Class 2A**<br>Secured claim<br>Creditor: Shopify Capital<br>All Assets<br>Total Claim: $141,034.00<br>Secured Claim: $141,034.00<br>Unsecured Claim: $0.00 | ☒ Impaired<br>☐ Unimpaired | The Class 2A claim is secured by a first priority lien against all assets of Debtor.<br><br>Shopify Capital's lien shall attach to the proceeds of the sale of its collateral with the same validity, extent and priority it held on the Petition Date. The allowed Class 2A secured claim shall be paid from the net proceeds of its collateral, after the reasonable and necessary costs of the sale, as they are realized, until it is paid in full or those proceeds are exhausted. Any deficiency shall be treated as a general unsecured claim under Class 3B.<br>~~The Class 2A claim shall be paid in full with twenty equal quarterly payments with simple interest at the then-applicable prime rate (currently 6.75%). See Exhibit 4.~~ |
| **Class 2B**<br>Secured claim<br>Creditor: Ouiby Inc. dba Kickfurther<br>Disputed<br>Total Claim: $189,415.44 | ☒ Impaired<br>☐ Unimpaired | The Class 2B claim is a disputed claim. Kickfurther holds a first-priority lien on the inventory funded by Co-Op 15800 and a lien on the Debtor's other assets that is junior to the Class 2A lien of Shopify Capital. Because the junior lien has no value in the liquidation, the Class 2B secured claim is limited to the value of the remaining Co-Op 15800 inventory and its proceeds. Kickfurther's lien shall attach to the proceeds of the sale of that inventory with the same validity, extent and priority it held on the Petition Date, and the allowed secured claim shall be paid from the net proceeds of that inventory. Distributions on account of the Class 2B claim shall be reserved pending allowance in accordance with Section 5.02. The balance of the claim shall be treated as a general unsecured claim under Class 3B. |

| | | |
|---|---|---|
| | | ~~The Class 2B claim is a disputed claim. Distributions on account of the Class 2B claim shall be reserved pending allowance in accordance with Section 5.02. The allowed secured claim, if any, shall be paid in full, with interest at the prime rate published in the Wall Street Journal as of the Effective Date, over twenty (20) equal quarterly payments during the term of the Plan. The allowed unsecured claim, if any, shall be treated as a general unsecured claim under Class 3B. To the extent the claim is disallowed, reduced, or subordinated, the distributions that would otherwise have been payable on account of the disallowed portion shall be applied first to the Litigation Reserve established under Section 7.01 and then distributed in accordance with the priority scheme of the Bankruptcy Code, pro rata to holders of allowed Class 3B general unsecured claims.~~ |
| **Class 2C**<br>Secured claim<br>Creditor: Samson MCA LLC<br>Disputed<br>Total Claim: $94,448.22 | ☒ Impaired<br>☐ Unimpaired | The Class 2C claim is a disputed claim. Distributions on account of the Class 2C claim shall be reserved pending allowance in accordance with Section 5.02. The allowed secured claim, if any, shall be paid in full from the net proceeds of its collateral, if any, in accordance with ~~interest at~~ the ~~prime rate published in the Wall Street Journal as~~priority of ~~the~~its ~~Effective Date, over twenty (20) equal quarterly payments during the term of the Plan~~lien. The allowed unsecured claim, if any, shall be treated as a general unsecured claim under Class 3B. To the extent the claim is disallowed, reduced, or subordinated, the distributions that would otherwise have been payable on account of the disallowed portion shall be ~~applied first to the Litigation Reserve established under Section 7.01 and then~~ distributed in accordance with ~~the~~Section ~~priority scheme of the Bankruptcy Code, pro rata to holders of allowed Class 3B general unsecured claims~~7.<br>03. |
| **Class 2D**<br>Secured claim<br>Creditor: Rapid Finance<br>Disputed<br>Total Claim: $88,371.00 | ☒ Impaired<br>☐ Unimpaired | The Class 2D claim is a disputed claim. Distributions on account of the Class 2D claim shall be reserved pending allowance in accordance with Section 5.02. The allowed secured claim, if any, shall be paid in full from the net proceeds of its collateral, if any, in accordance with ~~interest at~~ the ~~prime rate published in the Wall Street Journal as~~priority of ~~the~~its ~~Effective Date, over twenty (20) equal quarterly payments during the term of the Plan~~lien. The allowed unsecured claim, if any, shall be treated as a general unsecured claim under Class 3B. To the extent the claim |

| | | |
|---|---|---|
| | | is disallowed, reduced, or subordinated, the distributions that would otherwise have been payable on account of the disallowed portion shall be ~~applied first to the Litigation Reserve established under Section 7.01 and then~~ distributed in accordance with ~~the~~Section ~~priority scheme of the Bankruptcy Code, pro rata to holders of allowed Class 3B general unsecured claims~~7.03. |
| **Class 3A**<br>General Unsecured Claims (Convenience Class)<br>Total Claimed: $5,~~772~~998.~~59~~78 | ☒ Impaired<br>☐ Unimpaired | ~~Each allowed Class 3A claim will be paid in full not later than 1Q'30. See Exhibit 4.~~ Each allowed Class 3A claim will be paid in full, after payment in full of allowed administrative expense claims and allowed priority tax claims, from the proceeds available under Section 7.03. |
| **Class 3B**<br>General Unsecured Claims (Claims Over $1,500.00)<br>Total Claimed: $1,~~510~~540,~~245~~751.~~11~~80 | ☒ Impaired<br>☐ Unimpaired | Each allowed Class 3B claim shall receive a pro rata distribution of the proceeds remaining after payment in full of allowed administrative expense claims, allowed priority tax claims, and allowed Class 3A claims, in accordance with Section 7.03. Each holder of an allowed Class 3B claim may elect, in writing on its ballot or by written notice filed with the Court and served on the Debtor and Debtor's counsel not later than the deadline for voting on the Plan, to reduce its allowed claim to $1,500.00 and to be treated as the holder of an allowed Class 3A claim, in which case the reduced claim shall be paid in full in accordance with the treatment provided for Class 3A. The election is irrevocable and operates as a waiver of any distribution on account of the amount by which the claim is reduced. Amounts paid to holders making the election shall be paid from, and shall reduce, the aggregate Class 3B distribution.<br>~~Each allowed Class 3B claim shall receive a pro rata distribution of the aggregate quarterly Class 3B plan payments in the amount of (i) $27,846.12 in 1Q'30, and (ii) $40,000.00 in each quarter from 2Q'30 through 2Q'31. See Exhibit 4. All holders of convertible notes may elect in writing not later than six months after the Effective Date to convert their notes to equity. If the election is not made, then the claim shall be treated as an allowed Class 3B claim and receive treatment herein.~~ |
| **Class 4**<br>Equity security interests of the Debtor | ☐ Impaired<br>☒ Unimpaired | Each holder of a Class 4 Interest will retain their rights and interests without impairment and will not receive any payments on account for their Class 4 Interests during the life of the Plan. |

## Article 5: Allowance and Disallowance of Claims

| | |
|---|---|
| 5.01 **Disputed claims** | A *disputed claim* is a claim that has not been allowed or disallowed by a final non-appealable order, and as to which either:<br>(i) a proof of claim has been filed or deemed filed, and the Debtor or another party in interest has filed an objection; or<br>(ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated. |
| 5.02 **Delay of distribution on disputed claims** | No distribution will be made on account of a disputed claim unless such claim is allowed by a final, non-appealable order. Funds that would be distributed to the holder of a disputed claim will be reserved pending the outcome of the claim dispute. |
| 5.03 **Settlement of disputed claims** | The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. |

## Article 6: Provisions for Executory Contracts and Unexpired Leases

| | |
|---|---|
| 6.01 **Assumed executory contracts and unexpired leases** | (a) The Debtor assumes, and if applicable assigns, the following executory contracts and unexpired leases as of the effective date:<br>1. ReadySpaces License Agreement, dated 02/25/2025, as amended, between Debtor and ReadySpaces CHV LLC, a California limited liability company. The Debtor is current on this lease and there is no default to cure.<br>Debtor does not intend to assign this lease.<br>(b) Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the effective date or under section 6.01(a) of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the effective date.<br>A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than 60 days after the date of the order confirming this Plan. |

## Article 7: Means for Implementation of the Plan

| | |
|---|---|
| **7.01 Funding for the Plan** | ~~The Plan will be funded with the following: (i) cash on hand; (ii) Debtor's projected disposable income over a period of sixty (60) months; (iii) any recovery from the prosecution of the Samson AP, including disallowance of the Samson proof of claim and avoidance and recovery of transfers paid to Samson MCA, LLC; and (iv) pursuit of other estate claims and causes of action, if any. Nothing in this Plan shall be construed as a waiver of the right of the Debtor or Reorganized Debtor to object to any proof of claim or scheduled claim on any ground. The Plan establishes a Litigation Reserve of $65,000.00, funded from the Debtor's projected disposable income, for the reasonable fees and out-of-pocket costs (including attorneys' fees, filing fees, service of process, expert fees, and deposition and transcript costs) of the Reorganized Debtor's post-confirmation prosecution of the Samson AP and of any objection to, or litigation concerning, disputed claims and other estate causes of action. The fees and costs of such litigation shall be paid first from the Litigation Reserve. If the Debtor recovers on the Samson AP, the net recovery shall be applied first to reimburse the fees and costs of the litigation, then to accelerate payment of the allowed priority tax claims (thereby reducing the interest that would~~ |

otherwise accrue under 11 U.S.C. § 511), and then to increase the distributions payable pro rata to holders of allowed Class 3B general unsecured claims. To the extent any disputed claim is disallowed, in whole or in part, the distributions that would otherwise have been payable on account of the disallowed portion may be applied to the Litigation Reserve to fund such fees and costs before the remainder is distributed pro rata to holders of allowed Class 3B general unsecured claims. Any balance of the Litigation Reserve remaining after final resolution of such litigation shall be distributed pro rata to holders of allowed Class 3B general unsecured claims.The Plan will be funded with the following: (i) cash on hand; (ii) the proceeds of the liquidation of the Debtor's assets under Section 7.02; (iii) any recovery from the prosecution of the Samson AP, including disallowance of the Samson proof of claim and avoidance and recovery of transfers paid to Samson MCA, LLC; and (iv) pursuit of other estate claims and causes of action, if any. Nothing in this Plan shall be construed as a waiver of the right of the Debtor to object to any proof of claim or scheduled claim on any ground. The reasonable fees and costs of prosecuting the Samson AP and the Debtor's other claims and causes of action shall be paid from the recoveries on those claims before those recoveries are distributed under Section 7.03.

**7.02 CompositionLiquidation of the Debtor's After the Effective DateAssets**

The Debtor will liquidate its assets as follows:

(a) Inventory. The Debtor will continue to sell its inventory directly to consumers through its website, and may sell inventory in bulk to wholesale and off-price buyers, for as long as the Debtor determines that continued operation remains commercially reasonable and in the best interest of the estate. The Debtor will pay the ordinary course expenses of those operations as they come due.

(b) Remaining inventory and intellectual property. When the Debtor determines that the cost of continued operation is no longer justified, it will cease operations and sell its remaining inventory, its intellectual property and its other remaining assets, in one or more transactions, by motion under 11 U.S.C. § 363 on notice to creditors.

(c) Vehicle. The Debtor is authorized to sell its 2021 Mercedes-Benz GLE 350 for the highest and best offer it receives, without further order of the Court, with any lien attaching to the proceeds. The Debtor shall hold the proceeds for distribution under this Plan and shall not use them to fund operations.

(d) Claims and causes of action. The Debtor will prosecute the Samson AP and its other claims and causes of action under Section 7.06.

Property of the estate shall remain property of the estate until it is sold or distributed under this Plan.

After the Effective Date, the Debtor shall be known as the "Reorganized Debtor." The CEO of the Debtor, Sheila Attari, will remain CEO of the Reorganized Debtor.

**7.03 Post-Confirmation Management and Compensation7.03 Distribution of Proceeds**

The Debtor will distribute the proceeds of its assets and its recoveries, as they are realized, in the following order: (i) the reasonable and necessary costs of operating, preserving and selling the Debtor's assets; (ii) to the holder of each allowed secured claim, the net proceeds of its collateral, in accordance with the priority of its lien; (iii) allowed administrative expense claims; (iv) allowed priority tax claims, with interest under 11 U.S.C. § 511; (v) allowed Class 3A claims; and (vi) allowed Class 3B claims. Claims at the same level of priority shall be paid pro rata. The Debtor may make interim distributions and shall reserve for disputed claims under Section 5.02.

Sheila Attari is the current CEO of the Debtor. She is not currently compensated but intends to file a Notice of Intended Action to receive compensation consistent with an annual salary of $75,000.00.

| | |
|---|---|
| | ~~The management of the Reorganized Debtor will remain the same as the management of the Debtor. The management of the Reorganized Debtor will be compensated at the rates currently approved for the management of the Debtor, subject to future adjustment.~~Sheila Attari will remain the Debtor's CEO through the completion of the liquidation and will not be compensated. |
| **7.04 Disbursing Agent** | The ~~Reorganized~~ Debtor will act as the disbursing agent under the Plan. If the Plan is confirmed under 11 U.S.C. § 1191(b), the ~~Reorganized~~ Debtor shall file a post-confirmation quarterly report in a format acceptable to the United States Trustee (including information detailing the payees and amounts of payment to creditors under the Plan), not later than 20 calendar days after the close of each calendar quarter until the date of the final decree or conversion or dismissal of the case. The ~~Reorganized~~ Debtor will not charge any fee for acting as the disbursing agent and for making the Plan distributions. |
| **7.05 Objections to Claims** | The Debtor ~~or the Reorganized Debtor, as the case may be,~~ will file objections to all claims that are inconsistent with the Debtor's books and records or are otherwise objectionable to the Debtor unless the Debtor deems the inconsistency to be insignificant. With respect to disputed claims that are not resolved prior to the Plan Effective Date, the ~~Reorganized~~ Debtor will have the authority, in its sole discretion, and in the reasonable exercise of its business judgment, to settle or compromise any disputed claim without further notice or Court approval. As provided by Section 502(c) of the Bankruptcy Code, the Bankruptcy Court may estimate any contingent or unliquidated disputed claim for purposes of confirmation of the Plan. Nothing contained in the Plan shall constitute a waiver or release by the Debtor ~~or the Reorganized Debtor~~ of any rights of setoff or recoupment, or of any defense, the ~~Debtor or the Reorganized~~ Debtor may have with respect any claim. The deadline for filing claim objections shall be six months after the Effective Date. |
| **7.06 Avoidance Actions, Strong Arm Powers, and Causes of Action** | All avoidance actions and strong-arm powers of a trustee under chapter 5 of Bankruptcy Code, shall ~~irrevocably~~be ~~vest~~retained ~~in~~by the Debtor ~~and be transferred in total to the Reorganized Debtor upon confirmation of the Plan~~. The deadline for filing avoidance actions under chapter 5 of the Bankruptcy Code shall be two years after the Petition Date pursuant to 11 U.S.C. § 546. The deadline for the ~~Debtor or Reorganized~~ Debtor to file any non-avoidance action shall be the later of (i) the statute of limitations for such cause of action and (ii) two years after the Petition Date. Regardless of whether they are listed on the Debtor's bankruptcy schedules of assets specified in the Plan, all causes of action owned by the Debtor shall ~~vest~~be ~~in~~retained by the ~~Reorganized~~ Debtor unless specifically settled with such settlement approved by order of the Court prior to confirmation of the Plan. |
| **7.07 Employment of Professionals ~~by Reorganized Debtor~~ and Payment of Professional Fees** | On and after the Effective Date, the ~~Reorganized~~ Debtor shall have the right to employ and compensate professionals as the ~~Reorganized~~ Debtor determines is appropriate and to compensate any such professionals without the need for any notice or further order of the Bankruptcy Court. Without limitation, the ~~Reorganized~~ Debtor is hereby authorized to retain Donald W. Reid, Esq. to prosecute the Samson AP and related estate causes of action on and after the Effective Date, without further order of the Bankruptcy Court. Counsel's fees and costs for such litigation shall be billed on an hourly basis under counsel's general engagement, paid from the ~~Litigation~~recoveries ~~Reserve~~on ~~established~~that litigation under Section 7.01, and shall remain subject to allowance under 11 U.S.C. §§ 330 and 331. Fees and costs of counsel incurred before the Effective Date shall likewise be billed on an hourly basis under counsel's general engagement and remain subject to allowance under 11 U.S.C. §§ 330 and 331. |

**7.08 Exemption from Transfer Taxes**

Pursuant to 11 U.S.C. § 1146(c), the issuance, transfer or exchange of a security, or the making or delivery of an instrument of transfer under a plan continued under 11 U.S.C. § 1129, may not be taxed under any law imposing a stamp tax or similar tax. Transfers under the Plan that are exempt from taxes under 11 U.S.C. § 1146(c) include all transfers by the Debtor after the commencement of the bankruptcy case in contemplation of the Plan but prior to the effective date. The taxes from which such transfers are exempt include stamp taxes, recording taxes, sales and use taxes, transfer taxes, and other similar taxes.

**7.09 Distributions Made Pursuant to the Plan**

Except as otherwise agreed to by the ~~Reorganized~~ Debtor in writing, distributions to be made to holders of allowed claims pursuant to the Plan may be delivered by regular mail, postage prepaid, to the address shown in the Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the bankruptcy court, to such address. Checks issued to pay allowed claims shall be null and void if not negotiated within sixty (60) days after the date of issuance thereof.

**7.10 Exculpations and Releases**

To the maximum extent permitted by law, neither the Debtor, ~~the Reorganized Debtor, their~~its management (acting in a fiduciary capacity in this case), nor any of their professionals employed or retained by ~~any of them~~it (acting in a fiduciary capacity in this case) (the “Exculpated Parties”), shall have or incur any liability to any Holder of a Claim for any act taken or omission occurring after the Petition Date through and including the Effective Date in connection with or related to the administration of this Case (but not including transactions and events occurring in the ordinary course of the Debtor’s business), the formulation and implementation of the Plan, transactions approved by the Bankruptcy Court (including any contract, instrument, release, or other agreement or document created or entered into in connection with the Plan), the solicitation of acceptances for or continuation of the Plan, or the consummation and implementation of the Plan and the transactions contemplated therein, including the distribution of estate funds; provided, however, that this exculpation provision: (1) shall not release or exculpate any Exculpated Party from liability arising from any act or omission that is determined to have constituted gross negligence or willful misconduct, (2) shall not limit the rights of any holder of a claim or equity interest to enforce rights arising under this Plan, and (3) shall not release any attorney from any obligations owed under the California Rules of Professional Conduct for malpractice liability.

**7.11 Injunctions**

The confirmation order shall enjoin the prosecution, whether directly, derivatively or otherwise, of any claim, obligation, suit, judgment, damage, demand, debt, right, cause of action, equitable remedy, liability or interest released, discharged, stayed, or terminated pursuant to the Plan.

Because the Debtor will not receive a discharge, the property of the estate shall remain subject to the automatic stay under 11 U.S.C. § 362 until it is sold or distributed under this Plan, unless the Court orders otherwise.

~~Except as provided in the Plan or the plan confirmation order, if the Plan is confirmed under Section 1191(a), then as of the effective date, all entities that have held, currently hold or may hold a claim or other debt or liability or equitable remedy that was stayed or is discharged or an interest or other right of an equity security holder that is extinguished pursuant to the terms of the Plan are permanently enjoined from taking any of the following actions against: (I)(a) the Debtor, (b) the Reorganized Debtor, or (II) their property; on account of any such discharged claims, debts or liabilities or extinguished interests or rights: (i) commencing or continuing, in any manner or in any place, any action or other proceeding; (ii) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order; (iii) creating, perfecting or enforcing any lien or encumbrance', (iv)~~

asserting a right of subrogation of any kind against any debt, liability or obligation due to the Debtor; and (v) commencing or continuing any action in any manner, in any place, that does not comply with or is inconsistent with the provisions of the Plan (the "Injunction"); provided, however, that if the Plan is confirmed under Section 1191(b), then, from the Effective Date under the date the Bankruptcy Court grants Debtor a discharge of all debts provided in Section 1141(d)(1)(A) of the Bankruptcy Code, the automatic stay arising under Section 362 of the Bankruptcy Code shall remain in full force and effect until or unless the Bankruptcy Court orders otherwise, and only upon the Debtor's completion of all payments under the Plan (and providing proof thereof), and after the Bankruptcy Court has granted the Debtor a discharge of all debts provided under Section 1141(d)(1)(A) of the Bankruptcy Code, then the Injunction set forth above shall become effective.

By accepting distributions pursuant to the Plan, each holder of an allowed claim receiving distributions pursuant to the Plan shall be deemed to have specifically consented to the injunctions set forth in this Section. The injunction is applicable to all creditors and parties in interest with respect to claims or causes of action arising or existing prior to the effective date.

All creditors and parties in interest who are presented with a copy of the confirmation order are charged with actual knowledge of the Injunction and with actual knowledge that the Injunction is applicable to said creditor and/or party in interest , such that it is impossible for said creditor and/or party in interest to have a good faith belief that the Injunction does not apply to said creditor's and/or party in interest's claim or cause of action. Accordingly, any creditor and/or party in interest charged with such actual knowledge may be held in contempt for violating the Injunction, which contempt proceeding shall include the Reorganized Debtor's reasonable attorneys' fees and costs for enforcing the Injunction only to the extent as allowed by law.

## Article 8: General Provisions

| | |
|---|---|
| **8.01 Definitions and rules of construction** | The definitions and rules of construction set forth in 11 U.S.C. §§ 101 and 102 shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the definitions herein. |
| **8.02 Effective date** | The effective date of this Plan is the first business day following the date that is 14 days after the entry of the confirmation order ("Effective Date"). If, however, a stay of the confirmation order is in effect on that date, the Effective Date will be the first business day after the date on which the stay expires or is otherwise terminated. |
| **8.03 Severability** | If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan. |
| **8.04 Binding effect** | The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity. |
| **8.05 Captions** | The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan. |

| | |
|---|---|
| **8.06 Controlling effect** | Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of California govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan. |
| **8.07 Corporate governance** | Section 1123(a)(6) of the Code applies to the Plan. The charter of the ~~Reorganized~~ Debtor shall include a provision prohibiting the issuance of nonvoting equity securities, and providing, as to the several classes of securities possessing voting power, an appropriate distribution of such power among such classes, including, in the case of any class of equity securities having a preference over another class of equity securities with respect to dividends, adequate provisions for the election of directors, representing such preferred class in the event of default in the payment of such dividends. |
| **8.08 Retention of Jurisdiction** | After confirmation of the Plan and occurrence of the effective date, in addition to jurisdiction which exists in any other court, the Bankruptcy Court will retain such jurisdiction as is legally permissible including for the following purposes: |

1. To resolve any and all disputes regarding the operation and interpretation of the Plan and confirmation order;

[2.] To determine the allowability, classification, or priority of claims and interests upon objection by the ~~Debtor or the Reorganized~~ Debtor and to consider any objection to claim or interest whether such objection is filed before or after the effective date;

2.[3.] To determine the extent, validity and priority of any lien asserted against property of the Debtor and property of the Debtor's estate;

3.[4.] To construe and take any action to enforce the Plan, the confirmation order, and any other order of the Bankruptcy Court, issue such orders as may be necessary for the implementation, execution, performance, and consummation of the Plan, the confirmation order, and all matters referred to in the Plan and the confirmation order, and to determine all matters that may be pending before this bankruptcy court in this bankruptcy case on or before the effective date with respect to any person or entity related thereto;

4.[5.] To determine any and all applications for allowance of compensation and reimbursement of expenses of professionals for the period on or before the effective date;

5.[6.] To determine any request for payment of administrative expenses,

6.[7.] To determine motions for the rejection, assumption, or assignment of executory contracts or unexpired leases filed before the effective date and the allowance of any claims resulting therefrom ;

7.[8.] To determine all applications, motions, adversary proceedings, contested matters, and any other litigated matters instituted during the pendency of the Bankruptcy Case whether before, on, or after the effective date;

8.[9.] To determine such other matters and for such other purposes as may be provided in the confirmation order;

[10.] To modify the Plan under Section 1 193 of the Bankruptcy Code in order to remedy any apparent defect or omission in the Plan or to reconcile any inconsistency in the Plan so as to carry out its intent and purpose upon motion by the ~~reorganized debtor~~Debtor;

9.[11.] Except as otherwise provided in the Plan and the confirmation order, to issue injunctions, to take such other actions or make such other orders as may be

necessary or appropriate to restrain interference with the Plan or the confirmation , or the execution or implementation by any person or entity of the Plan or the confirmation order;

10.[12.] To issue such orders in aid of consummation of the Plan and the confirmation order, notwithstanding any otherwise applicable non-bankruptcy law, with respect to any person or entity, to the fullest extent authorized by the Bankruptcy Code or Federal Rules of Bankruptcy Procedure;

~~[13.] To enter a discharge, under sections 1192 and 1141(d) of the Bankruptcy Code, if applicable, and~~

[14.] To enter a final decree closing the bankruptcy case.

## Article 9: Discharge

~~If the Plan is confirmed under § 1191(a), on the effective date of the Plan, the Debtor will be discharged from any debt that arose before confirmation of this Plan, to the extent specified in § 1141(d)(1)(A), except that the Debtor will not be discharged of any debt: imposed by this Plan; or to the extent provided in § 1141(d)(6).~~The Debtor will not receive a discharge. If the Plan is confirmed under § 1191(a), the Debtor is not entitled to a discharge under § 1141(d)(3). If the Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt, and the Debtor will not seek a discharge under § 1192.

~~If the Plan is confirmed under § 1191(b), confirmation of this Plan does not discharge any debt provided for in this Plan until the court grants a discharge on completion of all payments due within the first 5 years of this Plan, or as otherwise provided in § 1192. The Debtor will not be discharged from any debt: (i) on which the last payment is due after the first 5 years of the plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.~~

## Article 10: Other Provisions

### 10.01. Notice of Effective Date.

As soon as practicable after the Effective Date, the Debtor shall file a Notice of Effective Date identifying the Effective Date and indicating that it has occurred.

### 10.02. Notice of Substantial Consummation.

If the Plan is confirmed under § 1191(b), not later than fourteen (14) days after the Plan is substantially consummated, the Debtor shall file with the Court and serve on the Subchapter V Trustee, the United States Trustee and all creditors and parties in interest, a notice of such substantial consummation of the Plan. Debtor shall promptly file a certificate of service demonstrating timely compliance with the service requirements of this paragraph.

### 10.03. Termination of Subchapter V Trustee for Consensual or Non-Consensual Plan.

Pursuant to Section 1183(c)(1), upon substantial consummation of a consensual plan pursuant to Section 1191(a), the service of the Subchapter V Trustee shall terminate, except that the United States Trustee may reappoint a trustee as needed for performance of duties under section 1183(b)(3)(C) and section 1185(a) of the Bankruptcy Code.

Pursuant to Section 1194(b), because the Plan specifies the Reorganized Debtor will act as the disbursing agent in the event the plan is confirmed as a non-consensual plan pursuant to Section 1191(b), although the Subchapter V Trustee will have no duties as disbursing agent, the Subchapter V Trustee shall remain in service for the duration of the nonconsensual plan.

## 10.04. Default.

**Event of Default.** An "Event of Default" shall occur only if the Debtor fails to make a payment required under this Plan when due, and such failure continues uncured for thirty (30) days after the Debtor's receipt of a written Notice of Default from the affected creditor. A failure shall not be deemed material if (i) it arises from a bona fide dispute regarding the amount due or the validity of the underlying claim, or (ii) it arises from circumstances beyond the Debtor's reasonable control, provided the Debtor is acting in good faith to cure.

**Notice and Cure.** A Notice of Default shall be in writing, shall identify the alleged default and the manner in which it may be cured, and shall be served on the Debtor and the Debtor's counsel of record by both certified mail and electronic mail at the following addresses: Buttercup Bodywear, Inc., Attn: Sheila Attari, Chief Executive Officer, 505 Main Street, Chula Vista, California 91911, sheila@shebirdshop.com; with a copy to Donald W. Reid, Esq., Law Office of Donald W. Reid, Inc., 770 First Avenue, Suite 250, San Diego, California 92101, don@donreidlaw.com. The Debtor may change either address by filing a notice of change of address with the Court and serving it on all creditors. A default cured within the thirty-day cure period shall not constitute an Event of Default.

**Remedies.** Upon an uncured Event of Default, the affected creditor's sole remedy shall be to file a motion with the Bankruptcy Court seeking such relief as may be appropriate. No Event of Default shall result in automatic acceleration of payments due under the Plan, and no creditor shall exercise any right of setoff, foreclosure, repossession, or other self-help remedy without prior order of the Bankruptcy Court. A default as to one creditor shall not constitute a default as to any other creditor or under the Plan generally.

Respectfully submitted,

/s/Sheila Attari
Sheila Attari, CEO

/s/Donald Reid
Donald Reid, Counsel for Debtor